**Mrs. Edna Romero DOTY et al.,**
**Plaintiffs-Appellants,**

v.

**ST. MARY PARISH LAND COMPANY,**
**Defendant-Appellee.**

**No. 77–1170.**

United States Court of Appeals,
Fifth Circuit.

July 10, 1979.

Leo J. Berggreen, Winston W. Riddick, Baton Rouge, La., for plaintiffs-appellants.

William R. Pitts, New Orleans, La., for defendant-appellee.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal raises the question of whether a mineral lessee and certain royalty owners are indispensable parties within the

---

meaning of Fed.R.Civ.P. 19 in a suit to try title to land. The district court found the absent parties to be indispensable and dismissed the action. Finding the dismissal to be a proper exercise of the district court's discretion, we affirm.

Appellants filed suit against appellee St. Mary Parish Land Company in the District Court for the Western District of Louisiana, seeking to be declared owners of two large tracts of land situated in St. Mary Parish, Louisiana. The complaint named twenty-six individual plaintiffs who were identified as being citizens of the states of Louisiana, Texas and California. St. Mary Parish Land Company, the only defendant named in the suit, is a Delaware corporation with its principal place of business in California.

The defendant filed a motion to dismiss the suit for failure to join as indispensable parties a mineral lessee, Atlantic Richfield Company, and thirty-eight mineral royalty owners. For purposes of diversity jurisdiction, it appears that Atlantic Richfield is a citizen of the state of California; the royalty owners are citizens of Texas, Pennsylvania, New York, Connecticut, California and Massachusetts. Both parties agree that the joinder of either of these absent parties would destroy complete diversity and therefore divest the district court of subject matter jurisdiction. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

The district court granted the defendant's motion to dismiss, finding the action could not, "in equity and good conscience," proceed without the mineral lessee and the royalty owners. Appellants now bring their appeal, challenging the district court's conclusion that these parties are indispensable to the action.

Prior to the amendment to Rule 19, problems of joinder were determined by the "technical or abstract character of the rights or obligations of the persons whose joinder was in question . . . ." Notes of Advisory Committee on Rules, Fed.R. Civ.P. 19, 28 U.S.C.A. at p. 105. But under the current version of Rule 19,[1] a finding of indispensability is based upon pragmatic considerations. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir. 1970); *Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885 (5th Cir. 1968); 3A *Moore's Federal Practice* § 19.-

1. Fed.R.Civ.P. 19 provides:

Rule 19. Joinder of Persons Needed for Just Adjudication

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1)–(2) hereof who are not joined, and the reasons why they are not joined.

(d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.

01[1]. Thus, Rule 19 adopts an "equity and good conscience" test which rests upon the application of four practical considerations. An examination of these four factors shows that the district court correctly dismissed the present lawsuit, due to the absence of indispensable parties whose joinder would have deprived the trial court of jurisdiction.

 The first factor calls for an assessment of the prejudicial effect of a judgment rendered in the absence of the party who cannot be joined. This factor requires the court to "consider the extent to which the judgment may 'as a practical matter impair or impede his ability to protect' his interest in the subject matter." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). A district court may refuse to proceed with the action if prejudice would result to either the absent party or to parties already joined.

Here, it is apparent that the mineral lessee [2] will be prejudiced, within the meaning of Rule 19, by a judgment rendered in its absence. Appellants correctly point out that the mineral lessee would not be bound, in the *res judicata* sense, by an adjudication of the validity of the land company's title.[3] Nonetheless, the fact that a party may not be bound by a judgment does not mean that an action may proceed without him. 390 U.S. at 110, 88 S.Ct. 733. If appellant's suit is successful, the resulting judgment, al-though not legally binding on the lessee, would certainly create doubt as to the validity of its title and probably some confusion about its obligations and rights with respect to the land. As a practical matter, a decision in favor of appellants would reduce the economic value of the lease, injecting an element of uncertainty into all of the lessee's business transactions concerning the lease. Moreover, in a subsequent suit between appellants and the lessee, an unfavorable judgment in the present case would constitute precedent adverse to the lessee's claims.[4] These possibilities convince us that the lessee could be prejudiced if the suit were allowed to proceed in its absence.[5]

The second factor requires a consideration of the extent to which prejudice may be minimized by limiting the relief granted. Yet it is difficult to conceive of a method by which the relief given in this case could be tailored to avoid prejudice to the lessee. Appellants in their complaint seek to establish their ownership to the land by having the defendant's title declared null and void. To grant them any relief at all would engender the problems we have previously discussed. In view of the relief requested by appellants, we are unable to devise, and appellants have yet to suggest, a form of relief that would minimize the prejudice to the mineral lessee. Thus the present case is to be distinguished from those cases relied upon by appellant[6] in which the courts were

2. Because we conclude that the trial court's dismissal may be upheld in regard to the mineral lessee alone, we need not discuss the indispensability of the royalty owners.

3. 1B *Moore's Federal Practice* ¶ 0.411[12] n.36 at 1679 and ¶ 0.411[1] at 1257.

4. Other courts have emphasized the possibility of the adverse precedential effect of a judgment in finding prejudice to the absent party. *See, e. g., Read v. Phillips Petroleum Co.*, 441 F.Supp. 1184, 1186 (E.D.La.1977); *Bloch v. Sun Oil Corp.*, 335 F.Supp. 190, 196 (W.D.Okl.1971).

5. Appellants point to dicta in *Ward v. Louisiana Wild Life & Fisheries Commission*, 224 F.Supp. 252, 257 (E.D.La.1963), aff'd, 347 F.2d 234 (5th Cir. 1965), to the effect that a mineral lessee is not an indispensable party. We do not feel bound by *Ward* for two reasons. First, the decision was decided prior to the 1966 amendment to Rule 19 and reflects an analysis which emphasizes the substantive rights of the parties instead of the pragmatic analysis mandated by the current version of the Rule. Second, the court in *Ward* was operating under the assumption that the rights of a mineral lessee are personal rather than real in nature. This quandry in Louisiana law has been definitively settled by the Louisiana legislature; now, mineral rights are clearly real rights. La.Rev. Stat.Ann. § 31.16.

6. *Estes v. Shell Oil Co.*, 234 F.2d 847 (5th Cir. 1956); *MacKintosh v. Marks*, 225 F.2d 211 (5th Cir. 1955), cert. denied, 350 U.S. 934, 76 S.Ct. 306, 100 L.Ed. 816 (1956); *Hudson v. Newell*, 172 F.2d 848 (5th Cir. 1949), modified, 174 F.2d 546. It should also be noted that each of these decisions was rendered in accordance with the pre–1966 approach to joinder questions.

able to minimize prejudice to absent parties by carefully shaping the relief given.

Third, we must consider whether a judgment rendered in the lessee's absence will be adequate. Here we examine the possibility of multiple litigation and resulting inconsistent obligations. The present case only marks the beginning of litigation with respect to the two tracts of land. If successful against the defendant, appellants must then pursue the lessee in an action to cancel the lease. A subsequent action against the lessee could result in the inconsistent determination that the lessor's title was valid, thereby creating conflicting obligations for the parties involved. On the other hand, in the event that appellants were to succeed against the lessee, a suit by the lessee against the lessor would follow. In short, we find the prospects of multiple litigation and inconsistent obligations to be likely in the present case.

The final factor is one which, in the end, we find to be most persuasive—the presence of an adequate forum if the action is dismissed. It is undisputed that the present action could be brought in a Louisiana state court, where complete relief would be afforded among *all* the parties. We have previously found the presence of a state forum to be compelling in these kinds of cases, *see, e. g., Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885 (5th Cir. 1968), and we summarily reject the suggestion by appellants that the state courts may not be competent to decide the present controversy.[7] Indeed, real property disputes are particularly suited to resolution by state courts:

> Since the courts of the state in which the land is situated are available to hear the action, dismissal by a federal court usually will not leave plaintiff without an opportunity to have the merits of his claim adjudicated. Indeed, unlike many other situations, a state court may be in a better position to entertain a real property action than is a federal court. In most cases one or more citizens of the forum state will be involved and local interests are always at stake when the forum state's land is in issue. For example, local title records may be affected by the judgment. Because the special concern of a state for the ownership and utilization of its land manifests itself in many ways, federal courts should not refrain from leaving particular controversies to the local courts when the analysis required by Rule 19(b) indicates that it should not go forward in the absence of someone described in Rule 19(a).

7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1621 at 208–09 (1972).

 In summary, we believe that a consideration of the factors set forth in Rule 19(b) leads inescapably to the conclusion that the present action should not proceed in the absence of the mineral lessee. The most complete and expeditious resolution of this controversy can be made in the state courts of Louisiana. *See Tardan v. California Oil Co.*, 323 F.2d 717 (5th Cir. 1963).

AFFIRMED.

---

7. Appellants' allegations of potential bias in the state courts of Louisiana amount to nothing more than unfounded assertions.